### In re NORTHAMPTON PORTLAND CEMENT CO.

(District Court, E. D. Pennsylvania. March 3, 1911.)

No. 3,739.

BANKRUPTCY (§ 252*)—CORPORATIONS — REORGANIZATION PROCEEDINGS—CONFIRMATION.

A bankruptcy court is not authorized by bankruptcy Act July 1, 1898, c. 541, § 27, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3433), providing that a trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate on such terms as he may deem for the best interests of the estate, or independent thereof, to confirm a proposed plan for the reorganization of a bankrupt corporation not amounting to a composition by which dissenting creditors will be compelled to accept stock in the new corporation to be placed in a voting trust for a term of years in exchange for their claims on the money and assets of the bankrupts, consenting in addition to the creation and priority of a large mortgage to provide a working capital for the new corporation.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 252.*]

In the matter of bankruptcy proceedings of Northampton Portland Cement Company. On certificate of referee confirming a plan of organization. Order vacated, and rule discharged.

See, also, 179 Fed. 726.

Robert A. Stotz and Edward J. Fox, for trustee.
Sidney E. Smith, for excepting creditor.

J. B. McPHERSON, District Judge. It may be that the proposed plan—which is not a composition, but a somewhat elaborate plan of reorganization—offers the unsecured creditors their only opportunity of obtaining any payment whatever upon their claims. Assuming the plan to be judicious, the question remains: Has the District Court any authority to enforce it? The fact that it has been approved by a large majority of the creditors is not decisive. Unless the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) empowers the court to take up the plan and make it effective, the creditors must do this by concerted action among themselves and cannot have the sanction of a judicial order. The only section of the act to which I am referred for the necessary authority is section 27:

"The trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interests of the estate."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It should be repeated that the proposed plan is not an offer of composition, and is not to be considered from that point of view. The bankrupt company is not making the offer, and there is no attempt to enable that corporation to resume business. On the contrary, a new corporation is to be formed, having mortgage bonds and capital stock, both preferred and common, and as a detail of the scheme it is proposed to transfer to the new corporation all the assets of the bankrupt—in part, by a future sale of the realty under an order of the court, and in part by a conveyance of certain personalty and other assets now in the hands of the trustee. It seems clear that such a plan cannot be imposed upon unwilling creditors. If all parties in interest should agree, something might perhaps be said in favor of assisting the formalities of transfer by proper judicial orders; but there is no inherent power in the court to compel minority creditors to give up legal property rights, and in their stead to accept securities and incur liabilities which have already been declined. If such power exists, it must be found in the bankruptcy act. No doubt, a composition may be imposed upon a reluctant minority of the creditors; but the power to carry out such an arrangement has been expressly given. There is no such grant of authority in case a certain plan of reorganization should seem desirable to the majority of a bankrupt's creditors. Section 27, which is alone relied upon to support the referee's order, has of course no reference to compositions; and, while its precise scope must be determined gradually, I think I may safely say that it does not authorize the approval of an elaborate plan—such as is now presented—to adjust the affairs of a bankrupt corporation and begin a new business venture. Disputes about the validity of claims are evidently the chief object of section 27, although it probably includes other controversies as well; but its scope would, I think, be enlarged unduly if it were construed to justify the court in compelling dissenting creditors to do such things as accepting stock in a new corporation, putting their stock in a voting trust for several years, giving up an existing claim upon money and other assets, consenting to the creation and priority of a large mortgage, and assenting to many other provisions such as are usually contained in a contract of reorganization. In my opinion a bankruptcy court has not been empowered to embark in enterprises of this kind. They may be desirable; but the creditors must determine that for themselves. The usual course of administration may be certain to result in heavy loss; but the court must pursue that course unless the act has authorized the use of exceptional means.

There is no precedent for such an order as is now asked for. The compromise that was substantially approved by Judge Holland in Re Linderman (D. C.) 166 Fed. 593, had no resemblance to the present plan, and in no sense supports the referee's conclusion. The case of In re Woodend (D. C.) 12 Am. Bankr. Rep. 768, 133 Fed. 593, is in some respects like the present controversy. See, also, In re Lockwood (D. C.) 4 Am. Bankr. Rep. 731, 104 Fed. 794, and In re Frear (D. C.) 10 Am. Bankr. Rep. 199, 120 Fed. 978.

The order of the referee made December 16, 1910, is therefore set

aside; and, as this action of the court renders it unnecessary to consider the rule granted by this court upon January 12, 1911, that rule is, accordingly, discharged.