In re FAIRLAMB et al.

(District Court, E. D. Pennsylvania. August 30, 1912.)

No. 3,871.

BANKRUPTCY (§ 336*)—PROOF OF CLAIM—AMENDMENT.

Where the trustee of a bankrupt circulated a paper containing a proposition for settlement among the creditors for their signatures, with a statement by each of the amount of his claim, and it was signed by all and returned and filed with the referee within a year, it constituted a sufficient claim to be amendable after the expiration of the year by a creditor which signed it in the belief that proof of claim was not required, but without whose assent the settlement could not have been effected.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 523, 524; Dec. Dig. § 336.*]

In Bankruptcy. In the matter of R. Crosby Fairlamb and others, copartners trading as the P. H. Fairlamb Company, bankrupts. On certificate of referee relating to order allowing amendment of claim by the Western National Bank. Affirmed.

Julius C. Levi, of Philadelphia, Pa., for Western Nat. Bank.
Peter M. MacLaren, of Philadelphia, Pa., for objecting creditor.

THOMPSON, District Judge. An adjudication in bankruptcy was entered November 11, 1910. On April 27, 1912, the referee, upon petition of the Western National Bank, entered a rule upon the trustee to show cause why the bank should not be allowed to amend its proof of claim and file a formal proof of claim nunc pro tunc, and on May 22, 1912, the referee made the rule absolute, and ordered that the Western National Bank be granted leave to file an amended proof of claim nunc pro tunc.

A short time after the adjudication in bankruptcy at a meeting of creditors, a proposition of settlement was submitted by which a corporation was to be formed to be called P. H. Fairlamb Company, Incorporated, to which the assets of the P. H. Fairlamb Company,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bankrupt, were to be transferred, and a committee of creditors was appointed to secure the consent of all the creditors in writing to accept stock of the proposed corporation and certain securities in settlement of their claims against the bankrupt. Within a year after adjudication, the signatures of all the creditors, including the Western National Bank, were obtained to an agreement, the essential clause of which is as follows:

We, the undersigned, hereby agree to accept in settlement of or on account of our claims the said common stock of the P. H. Fairlamb Company and the stock of the said Bell-Union Coal & Coke Company in the amounts of each set opposite our respective names without prejudice to our claims in the event of the said proposition not being accepted and settlement effected, and for the balance of our claim will accept certificates of the trustees holding the "Trust Fund."

The following is the form of signature arranged on the paper:

| Name of Creditor. | Amount of Claim. | Amount of Coal Stock. | Amount Common Stock P. H. Fairlamb Co. | Trustee's Certificates. |
|---|---|---|---|---|

The bank in signing the paper set out the amount of its claim, together with the amount of coal stock, the amount of common stock of the P. H. Fairlamb Company, and the amount of trustee's certificates which it agreed to accept. Creditors to the amount of about $200,000 filed with the referee within the year formal proofs of claim, while creditors in amount of approximately $100,000, among whom was the bank, did not file such proofs. The trustee of the bankrupt company was to be trustee under the trust deed, to be manager of the P. H. Fairlamb Company, Incorporated. He was active in obtaining the settlement and signatures to the agreement, and the agreement was delivered to him and remained in his possession as trustee. The bank claims that its signature having been obtained to the agreement by the trustee in bankruptcy and committee of creditors, and it having signed the agreement to accept stock in the new corporation in payment of its claim against the bankrupt estate, and being unrepresented by counsel, it was under the impression that a settlement had been made, and no further steps were necessary upon its part. Its position is that its signature to the agreement, filed with the trustee within the year and setting out the amount of its claim, is sufficient in substance as a proof of claim to empower the court to permit it now to file an amended proof of claim setting out the formal requirements under section 57a of the Bankruptcy Act.[1] The contention of the petitioner for review is that the mere signing of the agreement setting out the amount of its claim filed with the referee within the year was not in substance a sufficient claim for the bank to base an amendment upon, and further relies upon the fact that the trust deed contains a clause providing that the funds of the P. H. Fairlamb Company, Incorporated, should be distributed among the creditors "who had filed claims duly allowed by the referee in bankruptcy," and its contention appears to be that the failure of the bank to file its formal claim within the year is evidence of its abandonment of any assertion of its claim under the settlement agreement.

I do not think that this clause in the trust deed will bear the construction which the petitioner desires to put upon it. If the signa-

[1] U.S. Comp. St. 1901, p. 3443.

ture to the agreement and statement of the amount of the bank's claim filed with the referee is sufficient upon which to base the amended claim, the due allowance by the referee may be made at any time prior to final distribution. The "proof" of a claim must not be confused with the "allowance" of the claim. Those are two distinct acts or proceedings, and the allowance, absolute or conditional, may or may not result from and follow the proof of the claim. Hargadine-McKittrick·Dry Goods Co. v. Hudson, 122 Fed. 232, 58 C. C. A. 596. 10 Am. Bankr. Rep. 225; In re Hornstein (D. C.) 122 Fed. 266, 10 Am. Bankr. Rep. 308.

It was conclusively settled in the case of J. B. Orcutt Co. et al. v. Green, 17 Am. Bankr. Rep. 72, 204 U. S. 96, 27 Sup. Ct. 195, 51 L. Ed. 390, that a claim delivered to the trustee in bankruptcy within the year is sufficiently filed within the meaning of section 57 of the Bankruptcy Act. It remains to be determined whether there was sufficient in substance in the agreement to constitute an amendable claim.

In the case of In re Kessler, 25 Am. Bankr. Rep. 512, 184 Fed. 51, 107 C. C. A. 13, the bankrupt firm had made an assignment for the benefit of creditors. A creditor firm in Paris sent to the assignee an account in detail of its transactions with the assignor showing a balance owing to the creditor. The account was accompanied with a letter stating that it was an extract of account of the firm showing a debit balance of Fr: 140720, and adding that a firm of New York attorneys were authorized to represent the creditor in the matter. There was no verification under oath, nor any statement whether any security was held as collateral therefor. Thereafter a petition in bankruptcy was filed, and a receiver was appointed, who was afterwards elected trustee. The assignee turned over to the receiver, among other things, the letter and account of the Paris creditor. It was held by Judge Lacombe, following the case of Orcutt Company v. Green, that the presentation and delivery of claims to the trustee within the year was sufficient, and that the creditor's claim contained "enough by which to amend," and, in view of the circumstances, the amendment was allowed. See cases cited in Judge Lacombe's opinion and in footnote. The courts have been extremely liberal in permitting amendments to proofs of claim where the amendment does not affect the substance of the claim.

In the case of In re McCallum & McCallum (D. C.) 11 Am. Bankr. Rep. 447, 127 Fed. 768, Judge McPherson said:

"If the proof of a right that had already been asserted in substance should thereafter (after the year) be found to lack form or precision, ordinarily, I suppose, such defect might still be remedied; but, as Judge Archbald said in a similar case—his opinion was afterward adopted by the Circuit Court of Appeals—'the general right to amend, regardless of the time which has elapsed, is abundantly sustained by the authorities. * * * But to do so it is plain there must be in the record as it stands the substance of that which is asked for. The right to amend can go no further than to bring forward and make effective that which in some shape is already there.' Re Mercur [D. C.] 8 Am. Bankr. Rep. 275, 116 Fed. 655; Id., on appeal, 122 Fed. 384, 58 C. C. A. 472."

In that case (McCallum & McCallum) a creditor, having proved his claim against the bankrupt firm, sought to amend it after the year had expired, so as to add to it a claim against one of the partners

individually as indorser upon a firm note to the order of the partner. It was held that the claim against the partner was a separate contract, and not in substance part of the original claim, and could not be tacked on to the original claim by amendment.

In the Case of Roeber, 11 Am. Bankr. Rep. 464, 127 Fed. 122, 62 C. C. A. 122, in commenting upon the allowance of amendment, the court said:

"Bankruptcy courts have the usual powers of courts of justice upon motion and for good cause to allow amendments. All parties were advised of the claim within the year. There is no dispute that the amount claimed is justly owing from the bankrupt. The amendment was in furtherance of justice and within a legitimate exercise of the power of amendment."

In the present case all the creditors signed the agreement within the year, and all creditors and the trustee·were advised in writing upon the agreement filed with the trustee of the claim by the Western National Bank and its amount. The settlement under the agreement could not have been consummated unless the bank had signed the agreement. As was said by Judge McPherson in the Northampton Portland Cement Co. Case (D. C.) 25 Am. Bankr. Rep. 565, 185 Fed. 542, where a similar plan was under consideration:

"It seems clear that such a plan cannot be imposed upon unwilling creditors. * * * In my opinion a bankruptcy court has not been empowered to embark in enterprises of this kind. They may be desirable, but the creditors must determine that for themselves. The usual course of administration may be certain to result in heavy loss, but the court must pursue that course unless the act has authorized the use of exceptional means."

To quote the language of the referee in this case:

"The equities of the claimant to file an amended proof of claim in the case in hand is much stronger than that in the case of In re Kessler. The signature to the paper was solicited by the trustee in bankruptcy, and the agreement was to receive distribution from the company to be formed who would settle with the creditors not directly out of the bankrupt's funds, but in stock of the said company. The creditors were naturally misled into the delusion that they would receive this distribution by virtue of their signature to the paper without further action on their part. The corporation organized to make this settlement, of course, were not bound to accept the amounts for which the creditors signed as final determination of the actual amount due the creditor, but the paper having been prepared for the signatures of all creditors, and requiring the signatures of all creditors to make it valid, the creditors had good ground to take it for granted that the amounts for which they signed not having been in any way disputed were accepted as proper claims."

I am of the opinion that the agreement filed with the referee, signed by the bank, setting out the amount of its claim and the securities which it agreed to accept, under the circumstances of this case, was sufficient in substance to constitute an amendable claim, and that it would be inequitable to permit the petitioner to enjoy the fruits of a settlement, which could not have become effective without the bank's assent, and to largely increase its dividend by forbidding the bank to be put in the position of having its claim allowed when the petitioner, together with all other creditors, was fully advised of the amount of the bank's claim.

The order of the referee of May 22, 1912, is affirmed, and the petition for review dismissed.