On the said Baxter attempting to address the court from the bar, at the present term, he was informed by THE COURT that he could not be heard until he had taken the oath above set forth, whereupon he objected that the said law was unconstitutional, and the court had therefore no right to compel him to take the said oath. The matter was subsequently argued by the objector in person, and T. A. R. Nelson against, and Horace Maynard in favor of, the constitutionality of the law. The ground first assumed for the objector was that the act impairs the obligation of a contract, because an attorney is examined in Tennessee by the judges of the state courts, and by them licensed to practice, and therefore to receive fees and emoluments of his profession. Upon this point, THE COURT, (TRIGG, District Judge,) after noticing the doubt whether congress has power to pass an act impairing contracts, and inclining to think that it has not, expressed the opinion that the admission of an attorney was not a contract, within the terms of the constitution.

---

## Case No. 1,119.

### In re BAXTER et al.

[18 N. B. R. 62.][1]

District Court, S. D. New York. June 7, 1878.

BANKRUPTCY — PARTNERSHIP AND PRIVATE DEBTS —AGENCY.

1. The bankrupts were the general business agents of a corporation, and as such were authorized to receive and disburse all the moneys of the corporation "except subscriptions to its capital stock." B., one of the bankrupts, who was treasurer of the corporation, received subscriptions to the capital stock, which he paid into the business of his firm. It did not appear that any stockholder or director of the corporation, except B. and his partner, had any knowledge of the misappropriation of the funds. *Held*, that B. was liable personally therefor; that the firm, having taken the funds with knowledge that it was not entitled to receive the same, was equally liable; and that proof could be made against both estates. [Emery v. Canal Nat. Bank, Case No. 4,446, followed.]

2. The bankrupts, as such agents, consigned goods of the corporation for sale to an English firm, of which B. was a member. Prior to the receipt of the goods, said firm had accepted and paid drafts of the bankrupts to an amount exceeding the value of all their consignments, and on that account claim that they have accounted with the bankrupts, and paid over the proceeds of the goods to them. *Held*, that this was not a payment which would discharge said firm from liability, and that the claim for such proceeds, being for a partnership liability of B., ranks in the distribution of his individual estate after his individual debts.

[In bankruptcy. In the matter of Archibald Baxter and Duncan C. Ralston.]

W. H. Arnoux and Mr. Macrea, for receiver.

W. A. Abbott, for assignee.

CHOATE, District Judge. Re-examination of claims under stipulation. One of the bankrupts, Archibald Baxter, was treasurer of a corporation, the International Packing Co. His firm, Archibald Baxter & Co., were the general business agents of the corporation, under an appointment by written resolution, authorizing them to receive and disburse all the moneys of the corporation "except subscriptions to its capital stock." Archibald Baxter, as treasurer, received subscriptions to the capital stock to the amount of one hundred and fifteen thousand four hundred dollars, which, notwithstanding this prohibition, he paid into the business of his firm.

---

[1] [Reprinted by permission.]

It needs no argument to show that he is personally liable to the corporation therefor, unless the corporation has acquiesced in and consented to the disposition which he made of the money.

There is an entire failure to prove such acquiescence. It is true that the fact was known to Baxter and his partner Ralston, who were both directors and officers of the corporation, and there were entries on the books of the corporation, which were kept by Baxter & Co., which might have led others to a discovery of the fact, but no proof is given that any other director or stockholder had any knowledge of the misappropriation of the funds.

The firm of Archibald Baxter & Co., having taken the funds with knowledge that they were not entitled to receive the same, are equally liable to the corporation with Baxter personally, and, on the authority of Emery v. Canal Nat. Bank, [Case No. 4,446,] I think proof can be made against both estates.

The goods of the corporation were consigned for sale by their agents, Archibald Baxter & Co., to Baxter, Steedman & Co., an English firm, of which Archibald Baxter is a member, and a claim is made against the separate estate of Archibald Baxter for the amount of these consignments. Baxter, Steedman & Co., received the goods with notice that they belonged to the corporation. Undoubtedly, so long as the proceeds remained in their hands, they would be liable directly to the corporation therefor.

It is claimed, however, that they have accounted with Archibald Baxter & Co. therefor, and paid over the proceeds of the goods to them. This would discharge Baxter, Steedman & Co., from liability to the corporation, as Archibald Baxter & Co. were its agents to receive the same. The only way, however, in which they have so paid over the proceeds is by the acceptance and payment, prior to the receipt of the goods, of the drafts of Archibald Baxter & Co. to an amount exceeding the value of all their consignments. This is not a payment which discharges Baxter, Steedman & Co. from liability. The transaction was, in substance and effect, not a payment to Archibald Baxter & Co. of the proceeds of the goods, but the application by Baxter, Steedman & Co. of the proceeds of the goods of the corporation to the payment of a debt due to them from Archibald Baxter & Co.

The receiver of the corporation has, in making proof of this claim, set it forth in his deposition as a claim for goods sold by the corporation to Baxter, Steedman & Co. He was evidently misled by the entries in the books. He should make new proof of the debt, setting it forth according to the fact. This claim being for a partnership liability of Archibald Baxter, will of course rank in the distribution of his individual estate after his individual debts.